WILLIAM J. ROTCH, executor, *vs.* SAMUEL R. MORGAN & another.

An executor, who had sold to himself stock belonging to his testator's estate, agreed with the residuary legatees, in order to terminate litigation by them against him concerning the sale, to transfer the stock to them, and pay them a percentage of the income he had received therefrom while it was in his hands, he "to have the benefit of all payments and expenditures which he could have rightfully made, if the stock had not been sold." He had paid a tax on said income to the United States. The estate of his testator had never paid any income tax, nor had any income tax ever been demanded therefrom, or from the estate of any deceased person within the collection district where the testator and the executor lived, although the practice was different in other districts. *Held*, that the executor was not to be credited with the amount of the income tax paid by him.

APPEAL by residuary legatees under the will of Charles W. Morgan against a decree of the probate court allowing the second account of William J. Rotch, the executor. The case was submitted to the judgment of the court on these facts agreed :

Charles W. Morgan died in 1861, and letters testamentary were issued to Rotch. Included in the estate were 350 shares of the stock of the Bloomsburg Iron Company. These shares Rotch, in 1862, sold, as executor, at public auction, and bought them for himself, either in his own name or in the names of others who subsequently conveyed them to him ; and large dividends were paid to him by the company after the sale. In 1867, the executor was cited by the residuary legatees to render his account, which he did, accounting for the shares as sold ; but the judge of probate refused to allow the account, and charged him with 250 shares standing in his name, and the proceeds of 100 shares which

had been sold by him, " said 250 shares to be treated as still belonging to the estate, and the other 100 shares to be considered as sold for the benefit of the estate, and all dividends received by Rotch on the whole 350 shares to be duly accounted for, he to have the benefit of all payments and expenditures which he could have rightfully made in relation to the stock if the same had not been sold, also of all sums he has already charged himself with on account of such sales."

After the decree of the probate court, and in settlement of litigation concerning the subject matter of it, an agreement, entitled " terms of adjustment," was entered into, February 25, 1869, between the executor and the residuary legatees, by which it was provided that the executor should transfer the 250 shares in his hands to the residuary legatees, and should pay over to them 75 per cent. of all the sums received by him from the sale of the other 100 shares, and from the dividends received by him on all the shares, and that " said Rotch is to have the benefit of all payments and expenditures which he could have rightfully made if the stock had not been sold, and also of all sums he has already charged himself with on account of the 350 shares."

Between 1862 and 1869 Rotch paid an income tax to the United States on the dividends received by him on these shares, and also on the profits of the sales of the 100 shares sold by him, and in his second account he credited himself with the sum so paid, amounting to $9000. This tax was paid by Rotch as on his private property.

" No return under the internal revenue laws of the United States was ever made of the earnings and losses of the estate of Charles W. Morgan, or any executor, trustee or custodian thereof, nor was any ever required from the estate by United States assessors, nor has any assessment of income tax ever been made against the estate or the executor thereof. The United States revenue assessor claims that, under the revenue laws, the estate of a deceased person in the hands of an executor or administrator is liable to pay an income tax on its gains and income, to be assessed to and paid by the executor or administrator ; but in the first congressional and assessment district of Massachusetts, (within which Charles

W. Morgan lived and died and Rotch resided,) no such income tax has ever been assessed and collected, though since the passage of the income tax act many estates in said district have been situated like the estate of Charles W. Morgan, having gains or income accruing while in the hands of executors and administrators. In the Suffolk district this has been otherwise."

The second account was allowed by the probate judge, and the residuary legatees appealed.

*B. R. Curtis & G. Marston*, for the executor.

*T. M. Stetson*, for the residuary legatees.

AMES, J.   The question whether, under the circumstances, the executor is entitled to an allowance for taxes paid by him to the United States, upon profits and dividends derived from the stock in the Bloomsburg Iron Company, depends upon the proper interpretation of the agreement of February 25, 1869, under which he claims such allowance.   That agreement was concluded as the termination and final settlement of an important and somewhat protracted litigation.   The sale of the stock by the executor had been objected to by the residuary legatees, as substantially a sale by himself as executor, to himself in his individual and personal capacity.   The decree of the court of probate had been against him upon that question, and although the terms of the agreement thereupon entered into do not require him to refund all that the decree, if literally carried out, would compel him to repay, there seems to be no doubt that it is based upon the principle of that decree, and must be considered as an admission on his part that the sale was one that was not binding upon the estate.

The effect of the agreement was to cancel the sale that was objected to, as to so much of the stock as still remained standing in the books of the corporation in the individual name of the executor, and also to make him account for all the profits which he had obtained upon so much of it as he had sold.   It is a part of the agreement that the executor should " have the benefit of all payments and expenditures which he could rightfully have made if the stock had not been sold."   While the stock has stood in his name under the controverted sale, he has considered and treated it as his own property.   The taxes which he has paid for

several successive years upon the profits and dividends derived from it are assessed upon him and his income, and not upon the estate. If the transfer under the circumstances must be taken as one which he has no right to make, his continuing to hold the property under that transfer would of course be equally objec- tionable. If that transfer, which, as the case finds, was made under such circumstances as not to be binding upon the estate, created the liability to taxation, and in that manner subjected him in his individual capacity to an annual expenditure or charge upon the income derived from those shares which would not oth- erwise have been incurred, there is certainly no injustice in hold- ing that the whole of that expenditure should be his loss.

The case finds that no income tax has ever been assessed upon or collected from the income of the estate of a deceased person in that district, while such estate remained in the hands of an executor or administrator. The very first step towards the justi- fication of the allowance claimed in the account would be to show that there was such a tax in point of fact actually assessed upon the general income of the estate in the hands of the executor. It is not enough to show that the assessor of the district was wrong in his view of the law, and that by the true interpretation of the statute he could have made, and ought to have made, such an assessment. There being in fact no assessment of the kind upon any income of the estate, there was apparently no possi- bility that he, as executor and on behalf of the estate, could rightfully have paid any tax upon that portion of the income of the estate derived from dividends or profits upon the Bloomsburg stock. To say the least, he wholly fails to show that he could rightfully have paid it in his capacity of executor.

It is argued on behalf of the appellee that the internal revenue laws of the United States required of executors, and others act- ing in any similar fiduciary capacity, to make returns of all divi- dends and profits received by them in such capacity, and to pay a tax thereon; that the omission on the part of the assessor to require such return in this case, and to assess the tax, was a mere mistake of law; and that the appellants ought not to be allowed to take advantage of the accident of an illegal escape from taxa-

tion.   In regard to the conflict of opinion among the assessors of different districts as to the liability of an estate while in the course of an administration to pay the income tax, we do not consider it necessary, on this occasion, to come to any decision. The question is not whether the estate could have been rightfully assessed, under the circumstances, upon its income, but whether, in the absence of any such assessment, the executor could select out a portion of such income, and voluntarily pay, as a tax upon that portion, the same rate per centum as is provided for by the statute in the case of incomes generally, and then charge it in his account against the estate as a payment which he could rightfully have made.   We do not think that he was bound or had the power to correct the mistakes of the assessor, and require him to reverse and revolutionize, as to one item of the property of one estate, the entire principle and system, upon which in the course of his duty, and under the sanction of his oath, he had undertaken to execute his official trust.   We do not think such a payment would have been one which he could rightfully have charged against the estate, " if the stock had not been sold."   The necessity for the payment grew entirely out of the transfer, which has been set aside and declared not to be binding upon the estate.   It was in no sense for the benefit of the estate, and had no tendency to relieve it from any burden to which he can show that it was legally subject.   The purchase by a trustee of property which he holds under the trust is always a transaction of great delicacy, and one which the court will watch with the utmost diligence. *Coles* v. *Trecothick*, 9 Ves. 234.   When it is determined that the purchase cannot stand, the trustee, or any purchaser from him with notice, on repayment of the purchase money, may be required to reconvey the property as it stood before the sale.   *York Buildings Co.* v. *Mackenzie*, 8 Bro. P. C. (2d ed.) 42.   And upon such reconveyance he will be allowed for money expended in substantial repairs in case of real estate, and generally for all expenditures in the preservation and proper care and due administration of the property, but the cases import that he is confined within that limit.   *Davoue* v. *Fanning*, 2 Johns. Ch. 252.   Hill on Trustees (4th Am. ed.) 539, and cases there cited in note.

The conclusion then at which we have arrived is, that the executor is not entitled, under the agreement of February 25, 1869, to claim that any of the payments, charged as the income tax upon the Bloomsburg iron stock in his second probate account, are shown to have been payments which he could rightfully have made "if the stock had not been sold." The account should therefore be reformed by disallowing all these charges and making the requisite correction of the item of interest. The decree of the probate court is therefore reversed (to that extent) with costs for the appellants. *Ordered accordingly.*